The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right. Thank you. Miss Halevy, is that how you pronounce it? Yes, Your Honor. Okay. You can hear us, can you? I can hear you fine. Thank you. And Mr. Watkins, can you hear us? Yes, I can, Judge Niemeyer. Yeah. Okay. We'll begin with the first case and then it's United States v. Lester and we'll hear from you, Miss Halevy. Thank you, Your Honor. May it please the Court, the victim's mother in this case asked for a 12-year prison sentence. The prosecutor did not oppose a mandatory minimum 15-year sentence. And despite this, the judge imposed the maximum statutory possible sentence of 30 years in prison followed by a lifetime of supervised release. This 30-year sentence violates the Parsimony Clause of 3553A, requiring that a sentence be sufficient but not greater than necessary to achieve the goals of sentencing. There are three primary areas in which this sentence was both procedurally and substantively unreasonable. First is the failure to consider the defense counsel's non-frivolous arguments. The second is the failure to provide reasonable explanations consistent with 3553A. And the third is a reliance on improperly calculated guidelines. One of the issues that's raised by the defense that was not addressed by the judge implicates both the procedural and the substantive reasonableness arguments. I referred in my brief to the case in the Second Circuit case of Dorvey, which describes the inherent problems with the child support, with the child pornography guidelines in that they routinely result in sentences or sentencing guideline ranges that are at or near the statutory maximum. And I would assert that based on this, sentencing judges have an obligation in every child pornography case or sex offender case to address with great particularity the 3553A factors. And again, regarding disparate sentences, the judge did not address this issue at all in her sentencing. I'd ask the court to consider several of the Fourth Circuit cases that are not cited in my brief but are available to the precedent in terms of reasonable sentences for cases such as Mr. Lester's. There must be many more cases, but my search turned up two which are very similar to Mr. Lester in that there were defendants who pled guilty to one count of producing child pornography under 2251A. Those cases are U.S. v. Rebus, 575 Appendix 104, in which the defendant pled guilty to one count of child pornography under 2251A and received a sentence of 180 months, the mandatory minimum sentence. And in the case of U.S. v. Silva, 643 Federal Appendix 306, similarly the defendant pled guilty to one count of production of child pornography and received a sentence of 262 months. And again, this is in contrast to Mr. Lester who received a sentence of 360 months for a guilty plea to one count. There are some sentences, there are some cases under 2251A that I found in which I think Mr. Lester clearly received an excessive sentence in comparison. One of those is U.S. v. Blauvelt, 638. You know, if you're going to go through and start comparing one case with another, it's difficult to generalize and just say somebody pled guilty to a statutory provision and received a different sentence. We have a sentencing range created by the guidelines, and we have factors that feed into it. And in this particular case, there were quite a few factors that contributed to the district court's 30-year sentence, including actual molestation and touching of a child, and including pictures of bondage, and a large number of images. And so if you're going to be trying to compare sentences, you're going to have to try to get the facts much closer to even start with the argument. Yes, I understand, Your Honor, and I appreciate that perspective. It's difficult to find the specific elements in these cases that match up exactly. I understand that, but what we have is we have a guidelines range specified, which is presumed to be an appropriate sentence. It's been pre-established by a lot of statistics and studies and findings. And within that guideline range, the district court exercises discretion. Now, in this case, there were a lot of different facts that characterized this particular violation, and my reading of what troubled the district court were those factors is what troubled the court and moved the court to the sentence it gave. Yes, respectfully, Your Honor, there were many factors that were not addressed. As I was saying, the defense counsel raised many factors, including disparate sentence, that were not addressed by the judge. And I recognize that the judge relied on other factors, but from the reading of the record, it appears that she relied in terms of 3553A almost exclusively on the need to protect the public from the defendant. In her sentencing, when she imposed sentence, there was reference, I didn't see reference to any other factors in terms of 3553A. She did, as you noted, rely heavily on certain facts that troubled her about the case, and particularly the fact that there was touching of a victim, there were sadistic images, and that the defendant admitted taking photos of teenagers in a mall. But, Your Honor, those factors were all addressed within the guidelines, and again, there is a problem with the guidelines calculation in this case, and I'd like to address that briefly, given your response regarding the other factors. The guidelines calculation that was made was two levels higher than was appropriate. It was a plain error, and the government has conceded, I believe, that this was plain error, and has asked the court to exercise its discretion not to correct the error, based on the totality of the circumstances. This is plain error here, counsel. In this particular case, the defendant said it's a conceitedly correct guidelines range. He said so in both orally and in pleadings. The judge relied on that, and did not require the government to put on further evidence. This is a case where there's a single sentence in a statement, in an uncontested portion of the statement, where the child's mother mentions something, but that's contrary to all the other evidence on which the court relied. Why is this plain error? Because, Your Honor, if all the facts are considered within the transcript that we have before us, it appears uncontradicted that at the time the offense occurred, Mr. Lester was not the step-uncle of this child. There's no evidence that says he was at the time. He was the step-uncle at the time of sentencing, and everybody agreed upon that, but based on the guidelines, the enhancement should only occur if he was a relative at the time of the incident. And for that reason... But that is in the pre-sentence report, and it's uncontested at the time of sentencing. In fact, it's explicitly stated to be uncontested at the time of sentencing. It was uncontested that he is the step-uncle, Your Honor, that's correct. But again, at the time of sentencing, that was his status. At the time of the offense, that was... I understand the position now, but why should the district court... Why is it plain error for the district court to rely on a record wherein defense counsel has had a full opportunity to talk to his client, doesn't contest it at the time of sentencing, and the enhancement depends on it being true at the time of the offense? Yes, Your Honor, that's why it was not... That's why we're using the plain error standard here, because it was not identified at the time, and this certainly is not the sentencing judge's fault. Nobody identified it at the time. It was just an error that was made based on a mistake. It was a mistake that was made at the time. I have two things I'd like to ask you about. The first is, don't the sentencing guidelines instruct courts to view these categories broadly? And so, strictly speaking, whether his brother was married to his partner before she became his wife, you're talking about the context of the domestic relationship, aren't you? And it seems to me that the sentencing guidelines quite arguably provides that latitude for the... That this really shouldn't even be considered error that needs reversal. And then the second thing I want to ask you is concerning the court's failure to address age and likelihood of recidivism. Do you plan to address our case of United States versus Webb, the case that came out during the summer in July on that issue? So if you could take those two questions, it would be helpful. Thank you, Your Honor. The first question regarding the broad interpretation of the enhancement or the language regarding the relationship between the defendant and the victim, I believe that that was intended regarding the caretaker role in terms of anyone who is in a caretaker role doesn't have to be officially designated as a caretaker. That was my interpretation of the reading regarding the broadness of that particular guideline. I don't believe that the word relative was meant to be interpreted in any way other than relative, but... Well, I thought the guideline itself talks about anybody who is in the care, custody, or supervisory control. It starts by saying parent, relative, or legal guardian. And then it says, or if the minor was otherwise in the custody, care, or supervisory control. That's pretty broad, isn't it? Yes, Your Honor. I agree that's very broad. But again, because everyone had assumed that the word relative covered the situation... Relative. I'm not asking you about relative. I'm asking you about the disjunctive and the custody, care, or supervisory control of the defendant. Yes, and... He was there with the child in the bedroom, in the house. He was living in the house, wasn't he? That's my understanding, but Your Honor, there was no inquiry really as to what the setup was in that house. And so that's why I'm arguing that at this point, there's no basis to presume or infer, even in a broad construction, that he had control in terms of a caretaker role over the child. It appeared that he was just living in the house, not as a caretaker, but just as a place to stay, which apparently he did later with his mother in the time prior to his arrest in this case. But what about the evidence in the case, though, Ms. Halibi, that he was alone with the child? So certainly, we know at least during the period he was alone with the child, he was in some sort of a caretaker role, wasn't he? That wouldn't be my interpretation, Your Honor. I suppose one could speculate that that might have been the case, but I would submit that it's more likely that because the child was asleep when this occurred, that it was in the nighttime when she was sound asleep, and he was not authorized to be in her room. That was my interpretation, but again, we don't have... That's a good point, but given the ambiguity in the record, how does this amount to plain error? Well, again, Your Honor, I respectfully submit that this particular situation is not one in which there's any evidence that Mr. Lester was a caretaker for this young child. Caretaker's not the only thing. It's caretaker or custody, or supervisory control. I mean, he's the only one at home. She's three years old. He's the only adult. He's got to be in the supervisory control at that moment. Again, Your Honor, I understand your interpretation, and I respect that. It's not an interpretation of the facts. I mean, tell me what his role was if a fire starts, or if she needs to go to the bathroom, or if... In other words, there's all kinds of conditions that arise that he would attend to. I don't know. He's not there. He obviously was there as a babysitter, so to speak. Your Honor, my interpretation was very different, and just based on the facts of what we received, was that he was living in the home, and that he was not authorized to go into the child's room. It was at nighttime when the parents were both... Not the parents. The mother was home with my client's brother, and that they were home at the time, and he went without authorization into her room. That was my interpretation based on the evidence that was submitted. Ms. Halevi, I don't mean to cut you off there, but it seems to me that you're under a minute here now. The most helpful case for your position is United States v. Webb regarding the court's failure to address the age of the defendant. Do you intend to address that here today? Your Honor, I would rely on that case. I did not plan to address it in detail, and I don't believe I'll have time in the 30 seconds I have remaining, but I do believe that it's relevant. Okay, why don't you consider addressing it on rebuttal, then, if you would. Okay, thank you. Thank you, Your Honor. I will. In terms of the age, just as a general matter, Your Honor, there are other cases as well that require the courts or suggest that the courts, as part of the analysis for an appropriate sentence, consider the age in terms of what age the defendant will be upon release. And I think in this case, he's 46 years old now, and a 30-year sentence will render him in his 70s at the time of release, which is a very old age. And I'm out of time, but thank you for the opportunity to address that. Thank you. Mr. Watkins? May it please the court, Your Honor. The government is asking this court to affirm the district judge's sentence in this case as it was procedurally reasonable, as well as in substance. First, Your Honor, I'd like to address the procedural matter. I believe my colleague has raised a number of issues that she does not believe the district court properly analyzed the 3553A factors and arguments for a variance. Judge, when you read this record in its totality, I think nothing could be further from the truth. We have a district judge that is engaged, that has a back and forth with family members about not only his age issue, but their love for him, his employment status, having worked for a fire department and done some good service in his working years. The judge specifically acknowledged reading the motion for a variance that Mr. Veith made regarding the guidelines and alleged problems with enhancements that some of the literature has pointed out. She told him it was very well written. At the end, after hearing from the mother of the child and everyone else, this judge takes a break and says, I need to step off the bench and let me contemplate these things before I pass sentence. This is an example of what I think this court wants to see from their district judges. A careful analysis, considered reflection on the arguments made by counsel, an exchange with the witnesses called in mitigation, and then a recitation of the 3553A factors. And this judge, yes ma'am? Because he would not be likely to recidivate, if that's a verb. And it seems to me that United States versus Webb, which we decided on July 13th, 2020, is exactly the same case in the sense that in Webb, at no point in hearing did the court engage the counsel on a discussion of the defendant's age and his lower future risk of recidivism. And we said, the government is asking us to do what we've said we cannot do, fill in the gaps in the district court sentencing. Now, don't we have a gap here regarding the defendant's age argument? I don't see anything in the record regarding the risk of recidivism and the defendant's age. I agreed with you that the judge was very comprehensive in other aspects. But don't we have a Webb problem here? And if not, why not? Yes, ma'am. Your Honor, I would direct you to page 120 of the joint appendix, where the family, they're addressing the court, and this is his mom, and is raising the issue that even 15 years, if that is going to be an extended sentence for him, and she might not live to see him get out. And the court acknowledges this, and I'm sorry for you, ma'am, I know it's tough, and recognizes that. And I think under Lynn and Rita, that is sufficient that the context and circumstances, Your Honor, shows that this district judge listened to that argument and heard that argument. And Judge, I agree with you that, of course, your blue decision, as well as Rita from the Supreme Court, requires a district judge to consider arguments for a variance. But I don't think it requires, when you have the context and circumstances like this, for a judge to essentially tick off each argument. Like, for example, in Rita, with the Supreme Court, there were three arguments made for a variance. The gentleman's military service, his vulnerability in prison, his physical condition. The district judge really didn't specifically address any of that. In the Rita case, the judge said he was unable to. Right, but I'm concerned about whether Webb binds us here. I understand your position that the district court was sympathetic to everybody involved, was thorough in most respects, but I'm worried about the panel in the Webb case pretty clearly said that a failure to address an argument related to a defendant's age and lowered future risk of recidivism is a gap that the appellate court cannot fill in. And this is, let me see if I can get to a page site, but the site to Webb is 965 F3rd 262. And that's, excuse me, that's at page 271 of the Webb opinion. How do we get around that? Judge, I believe you look at the context and circumstances as the Lynn case, which came after the Carter line of cases and dealt with the procedural reasonableness of sentences and the failure to explain aspect of procedural reasonableness. And we look at this, we look at the age issue was raised here and the colloquy with the family members. It's clear the judge listened to that and understood it, but it's also clear that the other 35 53 a factors such as his dangerousness to the community outweighed that. And I think that's clear by the context. I understand if you disagree with me there, but I think the context and Lynn specific specifically would allow you to do that and you would not be filling a gap. We would just be following what the record says and what Lynn allows us to do. Let me ask you this. I thought somewhere in the record, Lester talked about fearing that he would die in prison and he wouldn't see his family again. And the court responded saying, I hear all of you, all the folks, including him before taking a recess, expressly stating, I've heard your arguments. Isn't that all the Supreme Court requires is that there would be expression that the matter was considered. Judge Nehemiah, I agree with you and you're absolutely correct. Mr. Lester himself raised that. And under Rita, I think the judge clearly heard that. There's no question that she listened and took a break. She said she did. She expressly said she did. Yes, sir. I agree. I agree with you completely. I think that Rita, in light of this record, should settle the matter that there's no gap to fill. And your honors, as to substantive reasonableness, could a reasonable jurist have given this sentence in light of the egregious facts? Absolutely. And judges, you know that if you three were trial judges and this case came before you, there might very well be three different sentences and there could be very well three reasonable sentences. And is 30 years a significant sentence? Yes, it is. Is it substantively reasonable? Yes, it is. With hands-on contact, photos of the hands-on contact of a young child, the predatory activity in shopping malls, taking pictures of young girls, a large child pornography collection on top of this, bondage images, all this, your honors, supports a sentence. Again, could a reasonable sentence on the gamut have been lower? Maybe, probably, but certainly I don't think we can say that this judge erred in substance in passing sentence here. Your honors, as to the plain error issue there, the government's brief agreed with counsel that there was an error insofar as the probation office, it seems specifically indicated it was applying the enhancement because he was a step-uncle. Crystal, the mother of the child, says they weren't married at the time on the record and a good lawyer found that statement and raised an argument. The government believes it doesn't matter, Judge, that you should not recognize that error. It doesn't jump off the page and I think you can raise, I will be honest with you, I toyed with the idea of not accepting it was plain error at all because the guidelines are so broad in the categories as we've talked about. However, sometimes the government can be criticized for not conceding where it ought to, so perhaps I gave away a bit too much in light of that, but nonetheless, there's no reason to recognize it. Judge Keenan, yes ma'am. Okay, Mr. Watkins, I want to get back to that language in Webb because this is still troubling me. I know you keep citing Rita, but Webb is the law of the Fourth Circuit here, decided just a couple months ago, and it says, We cannot infer the requisite consideration from silence alone, no matter how attentive. And where is there evidence here that the court addressed his argument regarding his age? I don't see, can you point us to any place in the record where the court talked about the defendant's age and how that would impact the sentence that the court was giving him? Because I just don't see it here. Well, Your Honor, in addition to what I've already pointed out, of course, the judge adopted the findings of the pre-sentence report, which set out his current age and indicate that she obviously knew how old he would be when he got out of prison if he lived through his sentence, whether he got a 15 year sentence or a 30. As well as I think there is no question that she listened to his arguments, acknowledged having heard from him and took a break. And Judge, despite to the extent one would want to read Webb strictly and say that what this judge did was improper, I think we would be elevating Webb over Rita. And what Rita requires of a sentencing judge. In this case, Rita is clear that the judge did not tip through each of the three variants arguments, but it was clear from the record that this was a straightforward, conceptually simple arguments. And while the judge could have said more, he didn't have to, to apply a guideline sentence. This gentleman, though it was a significant sentence, got a guideline sentence. And as Your Honors know, a sentence within the guidelines, less of an explanation than perhaps a variance upward or downward is required. And I think with Rita, Judge Hendricks or the district judge in this case certainly satisfied that. So, Your Honors, I'm happy to answer any more questions on any of these matters. If there's nothing, I will stand on my brief. What about the 3553 statement at the end that this is principally based on incapacitation, that 360 months is necessary to protect the public and that that's the basis for the judge's finding? Is that sufficient? Your Honor, I think that is probably the key 3553A factor and reason that she gave him such a lengthy sentence, but I don't think it was alone. I mean, obviously, she. I understand that part. I think there's a lot in this record, but isn't the judge's statement that that's what's necessary to protect the public, that 360 months is necessary to protect the public? Isn't that sufficient under 3553 to explain the length of the sentence? Yes, sir. That's essentially what the judge said. And Rita, he couldn't find a reason why the guideline sentence didn't apply and he need to protect the public. Supreme Court said that's sufficient. That's essentially a mirror image of what we have here. So, yes, sir. Well, if there's nothing else, Your Honors, I'll stand on my brief, but again, happy to answer any questions. All right. Thank you, Mr. Watkins. Mrs. Halevy. Thank you, Your Honor. I don't know that there's more I can say regarding the Webb case than what Judge Keenan has already expressed. I do agree that that requires a judge to address the issue of age, and I don't believe that it is precluded. Well, let me ask you about this word address. It seems to me you rest heavily on that. And we in SLAPI, we indicated that a sentence that the judge needed to address non-frivolous arguments. Right after SLAPI came out, the Supreme Court came out and reiterated Rita and said that all the court needs to do is ask to demonstrate that it considered it, used the word consider. So then the very next case after that, Judge Gregory was again writing in Ross, and he said consider or address the matter. And so whenever we say address since that Supreme Court case, which is only about a year and a half old or two years old, every time we say address, we obviously have to mean address in the sense that the court has to show that it considered it, but not need to express words. And I think that's still the standing of Rita and every Supreme Court case that's addressed sentencing. So in this case, after the defendant, both the mother and the defendant talked about age, he was worried he was going to die in prison, he wouldn't see his family again. And his mother said the same thing. She said, I hear this and I'm going to take it into consideration. And she then took a break. But it seemed to me there's zero doubt that she considered these things. It was part of the dialogue. This wasn't just silence. She was listening and she acknowledged she listened. And so I don't understand why we can't defer to the discretion which the trial judge has to select a sentence based on incapacitating a defendant in a very, very dangerous situation. The court found the man dangerous and rely on that having considered everything else. We're getting to the point where we're almost scripting what a district judge has to say rather than getting to the substance of we have to know enough to decide whether the court heard. But we do know enough. We know everything the court heard and considered in this case. And we can weigh that. And the court expressed itself quite thoroughly. This is a very extensive exchange that engaged here. This is error. I'm not sure what we are going to require sentencing. Your Honor, I again, I respectfully disagree with my reading of the transcript. The judge often responded by saying, I hear you or I know. And then she she took a recess to consider. But it's very unclear what in my reading in what she actually was considering because because spoken it to her. They had just spoken to her. But there were a lot of things that were that were spoken and she took a recess and didn't put anything on the record other than the need to protect the public. And I agree with you that she clearly intended to incapacitate this defendant. But again, one of the cases I wanted to say, in contrast, was U.S. v. Blauvelt, 638 F. 3rd 1281, in which there were there were this is a case in which someone went to trial and was convicted of five counts of child production, child pornography production and received only a 293 month sentence. And so in comparison, when you look at disparate sentencing, this is something, again, I know the court hasn't taken this up at this oral argument, but I would urge the court to consider that factor as well as a 35 53, a factor that is relevant in this case, as well as the age factor, because there again, in my reading, the judge said she would generally consider all the things that have been said, but she didn't specifically say when I go back, I'm going to consider ABC. She didn't specifically. Well, she said this. She the last substantive thing she heard was Lester talking about his dying in prison and not being able to see the family. There is a brief exchange. And then the court says this is really a tough case. The defendant, I don't really understand. He because he appears to be highly intelligent, capable, working actually for working on behalf of law enforcement, kind of one way or another. He seems to genuinely love his family, which is how she took all the age issues. And they seem to, despite everything, generally love him and forgive him. So it's really a hard situation. So she is now reflecting on all this statement, which is mostly related to age, not being able to see him again, dying in prison. My family had cancer. I will probably get cancer. These things are said. And then this is her response. Now, I don't quite know how we're supposed to read dialogue. Well, again, your honor, I would just if I could just respond that that the response of the judge appeared to me to be a very general response after quite a lengthy presentation by defense counsel of many of all. So you want her to insert in there? I considered his age. I considered the cancer. I considered the fact he won't see anybody and then go on. Is that what you want to add? Instead of her saying, I hear all these things. It's a tough case. And I know everybody loves him and cares for him. I mean, you know, you're in a real world where people are trying to do their best. And this judge was very conscientious, spent a lot of time listening, empathizing with everybody, including the defendant and and addressed the reasons why she thought, despite that, we needed a heavy sentence. And she explained that, too. I mean, again, your review is that was that an abuse of discretion? What she did? Well, again, your honor, in terms of a sentence that is sufficient but not greater than necessary, she imposed all of the standard requirements for sex offenders, plus some in her in her supervised release terms. And there was no indication of why those particular conditions would not be sufficient to ensure the public safety rather than an extended prison term. And that that, I think, is is an important element of what needs to happen at any sentencing and particularly under the child sex offender guidelines, where, again, almost a very large percentage of people who are facing these guidelines are facing the maximum allowable under the statute. But that doesn't take into account that he had 2200 pictures. He had six bondage pictures. He touched the defendant. He photographed I mean, the victim. He photographed the victim. He photographed others in a public situation where they didn't know about. These are all facts that make this more egregious in the district court size. I understand, your honor. I recognize also that I've run over my time and I'm happy to address this issue further if you'll allow. But I don't want to. All right, we'll get you. Well, you have some rebuttal. We'll have you back. Let's know. This is your rebuttal. This is the end. I appreciate I appreciate the time. And again, my plea is, is that the court consider all of the defense counsel's arguments that were not addressed and that the blanket statement given by the judge in our position is is not sufficient to address the issues in any meaningful way. I understand address or consider, but it doesn't appear that those were considered when you look at the sentence itself. All right. Do I understand your court court appointed? Yes, your honor. I want to thank you genuinely. Thank you for your service to the court. You've done a fine job. And of course, that's a very important service that attorneys perform. I also would like to indicate that it's our custom and practice now to come off the bench and come down and shake each of your hands. This is part of the Fourth Circuit practice that's gone since the 1930s, and it's sacred. And unfortunately, this is probably the first time that I know of that we've not been able to do it. But when you come back to court again, we're going to shake your hands double wise to make up for this one. And we'll do this one virtually. Thank you for your arguments. We'll adjourn for take a short recess to reconstitute the panel with a new counsel. Thank you very much.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Richard Ernest Myers II